IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOANG VAN PHAM, | No C 07-2929 VRW (PR) |
|     Petitioner, | |
|     v | ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY |
| DERRALL ADAMS, Warden, | |
|     Respondent. | |

Hoang Van Pham seeks a writ of habeas corpus under 28 USC § 2254, which, for the reasons that follow, the court denies.

I

On September 3, 2002, a complaint filed in Alameda County superior court charged petitioner with first degree murder with attached firearm enhancement allegations. Doc #15-2, Ex A at 1. On June 14, 2004, a jury found petitioner guilty of first degree murder and found true the firearm allegations. Doc #15-2, Ex A at 222.

On December 5, 2004, the trial court sentenced petitioner to fifty years to life in prison, consisting of twenty-five years to

life for first degree murder and twenty-five years to life for one of the firearm enhancements. Doc #15-2, Ex A at 282-83.

On August 23, 2006, the California court of appeal affirmed the judgment. Doc #15-2, Ex E. On November 15, 2006, the California Supreme Court denied review. Doc #15-2, Ex G.

On June 5, 2007, petitioner filed a federal petition for writ of habeas corpus under 28 USC § 2254. Doc #1. The court found that although three of petitioner's claims had been exhausted, the fourth, alleging ineffective assistance of counsel, had not. Doc #4. On December 12, 2007 the court granted petitioner's motion to stay, Doc #5, and ordered the proceedings stayed until petitioner exhausted his fourth claim in state court. Doc #6.

On January 23, 2008, petitioner filed a petition for a writ of habeas corpus with the California Supreme Court, alleging ineffective assistance of counsel. Doc #15-2, Ex I. The California Supreme Court summarily denied this petition on July 9, 2008. Doc #15-2, Ex J.

On July 18, 2008, petitioner moved to reopen the case, stating that he had exhausted his fourth claim. Doc #8. On October 7, 2008, the court granted petitioner's motion, found that the petition stated cognizable claims for relief and ordered respondent to show cause why a writ of habeas corpus should not be granted. Doc #11. Respondent has filed an answer. Doc #15-2. Petitioner did not file a traverse.

//
//
//

II

The California court of appeal summarized the factual background of the case as follows:

> [Petitioner] was convicted of murdering Trang Thu Nguyen [hereinafter referred to as "Nguyen"], a young woman whom he considered to be his girlfriend.
>
> Nguyen's mother, Mai Huon, moved to the United States from Vietnam in 1996. She lived in an apartment on 26th Street in Oakland. [Petitioner] also lived in the apartment.
>
> In 1997, Nguyen and her sister Trang came from Vietnam and moved in with their mother and [petitioner]. Nguyen turned 23 that year. The apartment proved to be too small and a few weeks later they all moved to a house on 10th Street in Oakland.
>
> Mai, her family, and [petitioner] lived in the house on 10th Street for about three years. In 2001, there was a fire and they were forced to move to a different house on 23rd Street. [Petitioner] stayed at the house briefly and then moved out because he was not satisfied with the new living arrangements.
>
> Neither Mai nor Trang was aware of a dating relationship between [petitioner] and Nguyen. However[,] several months after [petitioner] moved out, they began to notice [petitioner] was loitering outside their home. On one occasion, Trang saw [petitioner] in a nearby parking lot. He said he was waiting for Nguyen. On another occasion, Trang found [petitioner] sitting in the dark at the bottom of the stairs. On yet another occasion, Trang overheard a telephone conversation in which [petitioner] told Nguyen that he did not want her associating with "her friend, the boy."
>
> Mai had similar experiences. On one occasion she noticed [petitioner] standing in front of their house. She asked him what he was doing. [Petitioner] said he was there to retrieve his mail. This was odd because [petitioner] had moved many months earlier. On another occasion, Mai found [petitioner] sitting on the stairs. He said he was waiting for Nguyen. Mai also overheard a telephone conversation between [petitioner] and Nguyen. She picked up the

3

extension and heard [petitioner] tell Nguyen that if he could not marry her, no one else would.

Chung Hoang met Nguyen at school some time in the middle of 2002. He was interested in dating Nguyen and they had a few group dates together. He too had several encounters with [petitioner]. On one occasion Chung took Nguyen to a laundromat. While he was waiting outside, [petitioner] approached and asked him about his relationship with Nguyen. Chung said they were just friends. On another occasion [petitioner] followed Chung and Mai Huon as they drove to church.

[Petitioner] purchased a .380 caliber handgun at a store in San Leandro in late July 2002. He used the weapon a little more than one month later.

On September 1, 2002, Chung and Nguyen went shopping with some friends. They returned to Nguyen's house around 7:00 p.m. When Chung pulled into the driveway, [petitioner] pulled in behind him, blocking Chung's car. [Petitioner] got out of his car and tried to block Nguyen from entering her house. Nguyen said, "If you want to say anything just get up to the house and we will talk." Chung said, "That's right." [Petitioner] replied angrily, "What do you want?" Chung turned and started to walk away. As he did, he heard a gunshot. He turned and saw a flash. Chung ran toward the street and heard more shots. [Petitioner] got into his car and drove away. Chung ran back to Nguyen. He found her dead on the ground.

Nguyen had been shot three times: in the chest, in the forehead, and in the right side of her head. The head wounds were contact wounds, which means the gun was in contact with Nguyen's head when it was fired.

Shortly before 9:30 p.m. that night, Oakland police received a call from an individual who said he had shot his girlfriend. Officer Randy White responded to the call. When he arrived, he found [petitioner] outside talking on a cell phone. White took [petitioner] into custody and asked him where the gun was located. [Petitioner] said it was in his room. Inside the room, White found the gun and two suicide notes.

4

Another officer at the scene spoke with [petitioner] before he was transported to the police station. [Petitioner] told the officer, "I shot my girlfriend." "I killed her."

Based on these facts, an information was filed charging [petitioner] with murder. ([Cal Penal Code] § 187.) As is relevant here, the information also alleged [petitioner] had personally and intentionally discharged a firearm and had caused a death. ([Cal Penal Code] § 12022.53, subd. (d).)

The case proceeded to a jury trial where the prosecution presented the evidence * * * set forth above. [Petitioner] testified on his own behalf and he admitted shooting Nguyen. He claimed the killing was an uncontrolled act brought about by feelings of jealousy.

According to [petitioner], he and Nguyen had a long-term intimate relationship that began while they were living on 10th Street. They loved each other and planned to marry. [Petitioner] gave Nguyen his paychecks and bought her a car. When that car was totaled, he bought her another car.

[Petitioner] said he and Nguyen shared a room when they moved to 23rd Street. However, Nguyen's mother was charging him too much rent, so he decided to move out.

After [petitioner] moved out, he still transported Nguyen to school and went on dates with her. He considered their relationship to be fine.

[Petitioner] denied that he ever followed Nguyen in his car or that he loitered near her home. He admitted that he encountered Nguyen and Chung at a laundromat. He spoke with Chung who told him he and Nguyen were just friends. Nguyen said the same thing.

On the night of August 31, 2002, [petitioner] did not sleep well, at least in part because he was suspicious of Nguyen. He went over to her home the following evening around 8:00 p.m. He could see she was not home. [Petitioner] spoke with a young man who was standing on the street. He said Nguyen was out with another man. [Petitioner] thought Nguyen was not being honest. He waited about five minutes. As he was about to leave, Nguyen and Chung pulled into

5

> the drive way. [Petitioner] parked behind their car, got out, and asked them where they had been. Chung replied aggressively, "She is now my girlfriend, she is no longer your girlfriend, so what do you want?" Nguyen did not say anything. [Petitioner] interpreted this to mean she agreed with Chung's statement.
>
> [Petitioner] was "angry and jealous and mad." He went to his car, got his gun, and shot at Nguyen and Chung. He had no clear memory of how many times he fired. His mind was "empty" at the time.
>
> [Petitioner] returned to his car, intending to shoot himself in the head. However, he wanted to explain himself to his family, so he went home first. He wrote two letters, one to his family and another to his landlord. By that time, [petitioner] had lost the courage to kill himself. Instead, he called 911.

Doc #15-2, Ex E at 1-5; <u>People v Pham</u>, 2006 WL 2425008, *1-3 (Cal Ct App) (footnote omitted).

### III

A federal court may not grant a writ of habeas corpus on any claim adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 USC § 2254(d).

"Contrary to" requires a finding that the state court's conclusion of law is opposite Supreme Court precedent or the state court's decision differs from Supreme Court precedent on a set of materially indistinguishable facts.  See <u>Williams v Taylor</u>, 529 US 362, 412-13 (2000). A state court "unreasonably appli[es]" federal

6

law if it identifies the correct governing legal principle from Supreme Court precedent, "but unreasonably applies that principle to the facts of the prisoner's case." Id at 413. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id at 409.

The only definitive source of clearly established federal law under 28 USC § 2254(d) is in the holdings, as opposed to the dicta, of the Supreme Court as of the time of the state court decision. Williams, 529 US at 412; Clark v Murphy, 331 F3d 1062, 1069 (9th Cir 2003), cert denied, 540 US 968 (2003). While circuit law may be "persuasive authority" for purposes of determining whether a state court decision is an unreasonable application of Supreme Court precedent, only the Supreme Court's holdings are binding on the state courts and only those holdings need be "reasonably" applied. Clark, 331 F3d at 1069.

In determining whether the state court's decision is contrary to, or involved an unreasonable application of, clearly established federal law, a federal court looks to the decision of the highest state court to address the merits of a petitioner's claim in a reasoned decision. LaJoie v Thompson, 217 F3d 663, 669 n7 (9th Cir 2000). Where the state court cited only state law, the federal court must ask whether state law, as explained by the state court, is "contrary to" clearly established governing federal law. See, for example, Lockhart v Terhune, 250 F3d 1223, 1230 (9th Cir 2001); Hernandez v Small, 282 F3d 1132, 1141 (9th Cir 2002) (state court applied correct controlling authority when it relied on state court case that quoted Supreme Court for proposition squarely in

7

accord with controlling authority).  If the state court, relying on state law, correctly identified the governing federal legal rules, the federal court must ask whether the state court applied them unreasonably to the facts.  See Lockhart, 250 F3d at 1232.

IV

Petitioner seeks habeas relief under 28 USC § 2254 based on four claims: (1) he was denied his right to due process under the Fourteenth Amendment because the trial court erred in instructing the jury; (2) he was denied his rights to due process under the Fourteenth Amendment and to confrontation under the Sixth Amendment because the trial court refused to review the confidential mental health records of a key witness, the mother of the victim; (3) his sentence constituted cruel and unusual punishment; and (4) he received ineffective assistance of counsel because trial counsel failed to challenge the composition of the jury under Batson v Kentucky, 476 US 79 (1986).

A

Petitioner claims that his right to due process was violated because the trial court instructed the jury on the definition of "motive" pursuant to CALJIC No. 2.51, which may have allowed it to convict petitioner of first degree murder without finding all the essential elements of the crime.  Doc #1 at 6.

//
//
//
//

8

1

The California court of appeal provided the following background for this particular claim:

> The trial court instructed the jurors on the crimes of murder and manslaughter and the differences between them. As is relevant here, the court instructed with CALJIC No. 8.50 as follows:
>
> "The distinction between murder and manslaughter is that murder requires malice while manslaughter does not.
>
> "When the act causing the death, though unlawful, is done in the heat of passion or is excited by a sudden quarrel that amounts to adequate provocation, the offense is manslaughter. In that case, even if an intent to kill exists, the law is that malice, which is an essential element of murder, is absent.
>
> "To establish that a killing is murder and not manslaughter, the burden is on the people to prove beyond a reasonable doubt each of the elements of murder and that the act which caused the death was not done in the heat of passion or upon a sudden quarrel."
>
> The court also instructed CALJIC No. 2.51 as follows:
>
> "Motive is not an element of the crime charged and need not be shown. However, you may consider motive or lack of motive as a circumstance in this case. Presence of motive may tend to establish the defendant is guilty. Absence of motive may tend to show the defendant is not guilty."
>
> [Petitioner] now contends the court erred when it instructed with CALJIC No. 2.51 because "heat of passion * * * resembles the emotional impulse that is generally denominated both in law and commonly as 'motive.'" Under these circumstances, [petitioner] maintains the motive instruction conflicted with the voluntary manslaughter instruction that required the prosecution to prove that the killing was not committed in the heat of passion.

Doc #15-2, Ex E at 5-6; Pham, 2006 WL 2425008 at *3.

The California court of appeal found that the trial court did not err in instructing the jury with CALJIC No 2.51, concluding that "it is not reasonably likely the jurors interpreted the instructions as [petitioner] suggests." The court of appeal explained that malice, an essential element of murder that is absent if a defendant acted in the heat of passion, is completely unrelated to the concept of motive. The court found that because the terms "malice" and "motive" were not used interchangeably in the instructions as a whole, it is not reasonably likely that the jury understood the terms to be synonymous. Doc #15-2, Ex E at 6-7; Pham, 2006 WL 2425008 at *3-4.

2

To obtain federal habeas relief based on an erroneous or ambiguous jury instruction, a petitioner must show that "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." Estelle v McGuire, 502 US 62, 72 (quoting Cupp v Naughten, 414 US 141, 147 (1973)). "[T]he instruction 'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." Estelle, 502 US at 72 (quoting Cupp, 414 US at 147). In reviewing an objectionable jury instruction, the court must inquire "'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution." Estelle v McGuire, 502 US at 72 (quoting Boyde v California, 494 US 370, 380 (1990)). An erroneous or ambiguous jury instruction that allows the jury to convict a defendant of a crime without separately finding all its elements gives rise to

10

constitutional error. See <u>Chambers v McDaniel</u>, 549 F3d 1191, 1199-1200 (9th Cir 2008).

3

Here, petitioner appears to argue that because the prosecution had the burden of proving he acted with malice (murder), and therefore not in the heat of passion (voluntary manslaughter), it was erroneous to instruct the jury that motive is not an element of the crime of murder. That is, according to petitioner, because murder is "motivated" by malice whereas voluntary manslaughter is "motivated" by passion, "motive" is the critical element that distinguishes these offenses.

As the court of appeal explained, petitioner's argument reflects a misunderstanding of the well-established legal terms "motive," "malice" and "intent." Petitioner's reliance on <u>People v Maurer</u>, 32 Cal App 4th 1121 (1995), which found the use of the jury instruction on motive (CALJIC No 2.51) he now challenges to be unconstitutional, is misplaced because <u>Maurer</u> dealt with an offense that specifically included motive as an element of the crime. Here, the challenged jury instruction did not relieve the prosecution of its burden of proving malice; moreover, CALJIC 8.50, which the jury also received, further clarified that the prosecution had the burden of proving beyond a reasonable doubt that petitioner did not act in the heat of passion. Given that the jury received this clarifying instruction and that CALJIC No 2.51 did not relieve the prosecution from proving all elements of the charged crime, the court of appeal's finding that "it is not reasonably likely the jurors interpreted the instructions as [petitioner] suggests" was not

11

contrary to, or an unreasonable application of, clearly established federal law. See 28 USC § 2254(d); <u>Estelle</u>, 502 US at 72.

B

Petitioner next claims he was denied his rights to due process under the Fourteenth Amendment and to confrontation under the Sixth Amendment because the trial court refused to review the confidential psychotherapy records of a key witness, the mother of the victim. Doc #1 at 6.

1

The California court of appeal provided the following background for petitioner's claim:

> The probation report prepared prior to sentencing noted that Mai, the victim's mother, had received mental health counseling services from September 25, 2003 through March 2, 2004. The associated records indicated that Mai had been treated by a family therapist for major depression.
>
> [Petitioner] subpoenaed the therapist's records. Mai asserted her psychotherapist/patient privilege. (See Evid. Code, §§ 1010 et seq.) [Petitioner] asked the court to review the records in camera to determine if they contained any information that might affect Mai's credibility. The court declined. The court first noted that the Supreme Court's most recent decision on the issue, <u>People v. Hammon</u> (1997) 15 Cal.4th 1117, had expanded significantly the privacy rights of patients receiving therapy: "Prior to that decision, the privacy rights of witnesses [were] [severely] limited in the sense that they were pretty much open to scrutiny by counsel for both sides by the mere subpoena of the documents themselves. [¶] Since then, there has become a greater sensitivity to the rights of victims and witnesses alike." The court acknowledged that <u>Hammon</u> faced the issue in a different procedural context: "Now, the Court is mindful that [<u>Hammon</u>] dealt with a

12

> pretrial discovery motion and indicated that this is something that needs to be addressed in a trial court before the testimony is held." In addition, the court indicated it considered the date on which the services had been rendered to be critical: "The concern that I have is that the records that have been presented here in court are dated effective September of 2003, which is probably close to the anniversary date, the first year anniversary date of the murder of Ms. Nguyen."
>
> The court then denied [petitioner's] request because he had failed to make an adequate foundational showing. "In this particular case, it seems to me, that before we go prying into the privacy rights of the mother of the decedent who was violently killed, that there has to be some showing beyond the mere speculation that it is possible that she suffered from some mental impairment that could have had some impact upon her, her testimony there. [¶] If the treatment occurred before the making of the statements, then there clearly is some relative and highly probative potential that is manifested that the Court can recognize. Here a year after the event, it becomes more in the form of speculation. * * * [¶] * * * [¶] * * * As I say, I'm basing it on the proffered showing that has been presented here. And what I hear, quite frankly, is nothing that really links up anything concrete that would give rise to a reasonable suspicion that the records provide anything that would warrant and outweigh the privacy rights of the patient."
>
> [Petitioner] now contends the trial court erred when it declined to conduct an in-camera review of Mai's psychotherapy records to determine whether they might contain information that was relevant.

Doc #15-2, Ex E at 7-9; Pham, 2006 WL 2425008 at *5.

The court of appeal, citing People v Hammon, 15 Cal 4th 1117 (1997) and People v Dancer, 45 Cal App 4th 1677, 1691 (1996) (overruled on other grounds by Hammon, 15 Cal 4th at 1123), held that the trial court had not abused its discretion in refusing to review the confidential psychotherapy records of a key witness because "a court is not obligated to review a witness's

13

psychotherapeutic records just because a defendant asks it to do so"; rather, the defendant must establish "good cause" by describing the records sought with "reasonable specificity" and providing a "plausible justification" for producing them.  Doc #15-2, Ex E at 9; Pham, 2006 WL 2425008 at *6 (quotations omitted).  Each of the cases cited involved a defendant attempting to access before trial witness psychological reports protected by California's psychotherapist-patient privilege, codified in Evidence Code Section 1014.  Hammon, 15 Cal 4th at 1120-21; Dancer, 45 Cal App 4th at 1691-92.  Here petitioner claims error because the trial court failed to allow post-trial access to confidential psychotherapy records of a testifying witness.

2

The Confrontation Clause of the Sixth Amendment guarantees a defendant in a criminal case an opportunity for effective cross-examination of the witnesses against him.  Delaware v Van Arsdall, 475 US 673, 679 (1986).  It "does not include the power to require the pretrial disclosure of any and all information that might be useful in contradicting unfavorable testimony." Pennsylvania v Ritchie, 480 US 39, 53 (1987).  Normally the Confrontation Clause "is satisfied if defense counsel receives wide latitude at trial to question witnesses."  Id at 53 (citing Delaware v Fensterer, 474 US 15, 20 (1985)).  Conversely, preventing a defendant from cross-examining a witness at trial on a critical matter may violate his right to confrontation, even if this limitation is imposed pursuant to a state's otherwise legitimate interest in protecting privacy.  Davis v Alaska, 415 US 308, 318-19

14

(1974). In such a case the court must balance the defendant's interest in presenting a complete defense against the state's particular privacy interest. Id at 319-20.

The Due Process Clause of the Fourteenth Amendment requires the prosecution to disclose to a defendant evidence material to either guilt or punishment. Brady v Maryland, 373 US 83, 87 (1963). Courts have applied this standard for disclosure to evidence in the possession of any branch of the government, including situations when such evidence is subject to confidentiality requirements imposed by statute or otherwise. See Ritchie, 480 US at 45. Generally this evidence is available to a defendant only if he makes some showing of how it would be material and favorable to his defense. Ritchie, 380 US at 58 n15.

3

Here, petitioner has not cited to, and this court is not aware of, any clearly established United States Supreme Court precedent specifically addressing the unusual type of post-trial use of psychological records requested by petitioner. Although in adjudicating petitioner's claims, the court of appeal relied only upon state law, it cited Hammon, which thoroughly discusses the binding Supreme Court precedent of Ritchie, Brady and Davis and concluded that the Sixth Amendment does not require pretrial disclosure of privileged information. Hammon, 15 Cal 4th at 1123-28. And the Dancer court, in holding that a defendant must establish "good cause" to access privileged witness psychotherapeutic records, accurately states the Fourteenth Amendment due process standard for accessing such records before

**15**

trial, as explained in Ritchie. Dancer, 45 Cal App 4th at 1692-93; see Ritchie, 380 US at 58 n15.

Here, petitioner's case raises a slightly different question because he sought to obtain confidential psychotherapy records post-trial and claims that the trial court's refusal to allow that access violated his Sixth and Fourteenth Amendment rights. In Ritchie the Court was unable to reach a majority regarding whether the Confrontation Clause guarantees any right to pre-trial discovery. See Ritchie, 380 US at 51-54. Further, the Court's description of confrontation as a "trial right, designed to prevent improper restrictions on the types of questions that defense counsel may ask during cross-examination" casts further doubt that petitioner's right to confrontation entitles him to the relief he now seeks. Id at 52.

Even assuming the Sixth Amendment confrontation right applies to requests for post-trial use of psychological records, petitioner's claim has no merit. Petitioner was fully able to cross-examine the victim's mother at trial and call into question her version of the facts; he has identified no way in which his ability to present a complete defense was hampered by his lack of access to the psychological records. Accordingly, petitioner is not entitled to relief on this claim.

As to petitioner's due process claim regarding the same evidence, again, petitioner has not cited to, and this court is not aware of, any clearly established United States Supreme Court precedent finding a due process violation when a trial court fails to review a defendant's post-trial request for psychological records of a testifying witness. Brady and Ritchie both addressed

**16**

situations where defendants sought evidence that was under the control of the government; as such, their holdings do not clearly apply to evidence in the possession of a private citizen – here, a psychologist. But even if the principles set forth in Brady and Ritchie apply here, petitioner's claim still has no merit. The law requires that a defendant make some showing of how the evidence sought would be material and favorable to his defense; petitioner has made no such showing and bases his request on mere speculation. Accordingly, petitioner is not entitled to relief on this claim.

C

Petitioner claims that his sentence constitutes cruel and unusual punishment in violation of article I, section 17 of the California Constitution. Doc #1 at 6. But because petitioner raises this claim under only state law and not federal law, he fails to state a claim upon which federal habeas relief may be granted. See 28 USC § 2254(a) (federal habeas relief available to a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States"). The court, therefore, is barred from considering this claim.

D

Petitioner claims trial counsel provided ineffective assistance of counsel in violation of the Sixth Amendment by failing to challenge the composition of the jury under Batson v Kentucky, 476 US 79 (1986). Doc #1 at 6.

Petitioner presented his claim of ineffective assistance of counsel in a petition for a writ of habeas corpus filed with the

**17**

California Supreme Court.  Doc #15-2, Ex I.  The court summarily denied petitioner's claim, citing <u>In re Swain</u>, 34 Cal 2d 300, 304 (1949) and <u>People v Duvall</u>, 9 Cal 4th 464, 474 (1995).  Doc #15-2, Ex J.  These cases explain the requirement under California law that a convicted defendant seeking habeas relief "allege with particularity the facts upon which he would have a final judgment overturned and * * * fully disclose his reasons for delaying in the presentation of those facts."  <u>Swain</u>, 34 Cal 2d at 304.  The petition also must "include copies of reasonably available documentary evidence supporting the claim, including pertinent portions of trial transcripts and affidavits or declarations."  <u>Duvall</u>, 9 Cal 4th at 474.  "Conclusory allegations made without any explanation of the basis for the allegations do not warrant relief, let alone an evidentiary hearing."  Id (quotation omitted).

     A federal court will not review questions of federal law decided by a state court if the decision also rests on a state law ground that is independent of the federal question and adequate to support the judgment.  <u>Coleman v Thompson</u>, 501 US 722, 729-30 (1991).  In cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.  Id at 750.  A petitioner must establish factual innocence in order to show that a fundamental miscarriage of justice would result from application of procedural default.  <u>Gandarela v Johnson</u>, 275 F3d 744, 749-50 (9th Cir 2002).

"Once the state has adequately pled the existence of an independent and adequate state procedural ground as an affirmative defense, the burden to place that defense in issue shifts to the petitioner," for example, by "asserting specific factual allegations that demonstrate the inadequacy of the state procedure" or "demonstrating inconsistent application of the rule." Bennett v Mueller, 322 F3d 573, 586 (9th Cir 2003).

Here, the California Supreme Court denied petitioner relief because he failed to allege with particularity the facts establishing a violation of his rights and to provide documentary evidence supporting the claim. Doc #15, Ex J. These reasons are adequate under California law to dismiss petitioner's claim, and are independent of his federal claims. See Swain, 34 Cal 2d at 304; Duvall, 9 Cal 4th at 474. The state has pled the existence of procedural bars, see Doc #15-1 at 21, and petitioner has not made the requisite showing that the procedural bars should not apply. See Bennett, 322 F3d at 586. Nor has petitioner attempted to show cause and prejudice or that failure to consider his claim will result in a fundamental miscarriage of justice. The court, therefore, is barred from considering his ineffective assistance of counsel claim. Coleman, 501 US at 750.

//
//
//
//
//
//

**V**

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED.

Further, a certificate of appealability is DENIED. See Rule 11(a) of the Rules Governing Section 2254 Cases (effective Dec 1, 2009). Petitioner has not made "a substantial showing of the denial of a constitutional right." 28 USC § 2253(c)(2). Nor has petitioner demonstrated that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v McDaniel, 529 US 473, 484 (2000). Petitioner may not appeal the denial of a certificate of appealability in this court but may seek a certificate from the court of appeals under Rule 22 of the Federal Rules of Appellate Procedure. See Rule 11(a) of the Rules Governing Section 2254 Cases (effective Dec 1, 2009).

The clerk shall enter judgment in favor of respondent and close the file.

IT IS SO ORDERED.

_____
VAUGHN R WALKER
United States District Chief Judge

G:\PRO-SE\VRW\HC.07\Pham-07-2929-deny petition-deny coa.wpd